J-S54023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARIO ABLE GUEVARA | : | |
| | : | |
| Appellant | : | No. 342 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 9, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0005700-2017

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:          **FILED NOVEMBER 12, 2019**

Mario Able Guevara appeals from the judgment of sentence, entered in the Court of Common Pleas of Berks County, after a jury convicted him of involuntary deviate sexual intercourse (IDSI),[1] intimidation of a victim,[2] sexual assault,[3] indecent assault (forcible compulsion),[4] indecent assault (lack of consent),[5] and false imprisonment.[6]  Upon careful review, we affirm.

_____

[1] 18 Pa.C.S.A § 3123(a)(1).

[2] 18 Pa.C.S.A. § 4952.

[3] 18 Pa.C.S.A. § 3124.1.

[4] 18 Pa.C.S.A. § 3126(a)(2).

[5] 18 Pa.C.S.A. § 3126(a)(1).

[6] 18 Pa.C.S.A. § 2903(a).

Between January of 2014 and October of 2017, Guevara supervised X.P.[7] at Witman's Cleaning Service (Whitman's). X.P.'s duties included cleaning a warehouse in Fleetwood, Pennsylvania. On October 6, 2017, while X.P. was working alone in the warehouse, Guevara sneaked behind X.P. and grabbed her chest. X.P. told Guevara he was scaring her and demanded he leave her alone. Initially, he complied. X.P. resumed her work and began cleaning a warehouse bathroom.

While X.P. cleaned a toilet, Guevara entered the bathroom, shut the door, told X.P. there were no cameras, and bear hugged her. X.P. freed her hands and hit Guevara. He responded by pinning her against the counter with one hand, pulling her blouse down with the other, and biting her breast. Guevara then forced one hand inside X.P.'s underwear and began removing her pants. Guevara then placed his mouth on her vagina. X.P. freed herself when Guevara attempted to use both hands to perform a sex act.

Outside the bathroom, X.P. accused Guevara of rape, to which he responded by saying no one would believe her because he did not penetrate her. He further stated no one would believe her without proof, and that she would lose her job. Once Guevara left the warehouse, X.P. went straight home and told her daughter what transpired in the warehouse. Over her daughter's protests, X.P. refrained from contacting the police because she believed she would lose her job, as Guevara was married to the niece of Whitman's owner.

_____

[7] We refer to the victim by her initials.

She also knew Guevara was aware she needed her job at Whitman's to support herself and her children. X.P. did not report the incident to the police until after confronting Guevara and recording their conversation on her cell phone.

At the conclusion of a three-day trial on June 27, 2018, a jury convicted Guevara of the above-mentioned offenses. The court sentenced Guevara to an aggregate term of seven-and-a-half to twenty years' incarceration. Guevara was also required to register with the Pennsylvania State Police for life, pursuant to the Sexual Offender Registration and Notification Act ("SORNA").[8] On October 15, 2018, Guevara timely filed post-sentence motions, which were denied by operation of law on March 20, 2019. In the interim, on February 21, 2019, Guevara timely filed the instant notice of appeal.[9] On March 14, 2019 Guevara filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Guevara raises the following issues for our review:

1. Whether the Commonwealth failed to present sufficient evidence to support a guilty verdict for [i]ntimidation of [w]itnesses or [v]ictims as no evidence was presented at trial to show that [Guevara] used/threatened force, violence, or deception in any alleged efforts to intimidate the alleged victim to support [t]he grading as a felony of the first degree[?]

_____

[8] 42 Pa.C.S.A. § 9799.55(b)(2).

[9] Notices of appeal "filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5).

2. Whether the trial court erred and abused its discretion when it instructed the jury that "oral contact with female genitalia is sufficient to support the penetration requirement for IDSI[,]" which allowed the jury to convict [Guevara] of both IDSI and sexual assault based upon something less than the required element that [Guevara] penetrated the complainant's vagina[?]

3. Whether the trial court erred by entering guilty verdicts as to the charges of IDSI, [i]ntimidation of [w]itness/[v]ictim, [s]exual assault, [i]ndecent [a]ssault—[f]orcible [c]ompulsion, [i]ndecent [a]ssault—[l]ack of [c]onsent, and [f]alse imprisonment as the verdicts were against the weight of the evidence, where the alleged victim's testimony was not credible and contradicted by other evidence admitted during trial[?]

4. Whether the trial court erred as a matter of law and imposed an illegal sentence of lifetime sex offender registration as the requirements of [SORNA] are punitive and the statutory maximum sentence for the registerable offense, IDSI, is 20 years[?]

Brief of Appellant, at 12–14.

In his first claim, Guevara contends his conviction for victim intimidation rests on insufficient evidence, arguing his statements "that no one would believe [X.P] if she reported the incident and that she would lose her job if she made the claim without proof" did not demonstrate that he "obstruct[ed], impede[d], impair[ed], prevent[ed] or interfere[d] with the administration of justice."  Brief of Appellant, at 24.

We evaluate challenges to the sufficiency of the evidence under the following, well-established standard:

We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Strafford*, 194 A.3d 168, 174 (Pa. Super. 2018) (citations and quotations omitted).

The Crimes Code, in relevant part, defines intimidation of witnesses or victims as follows:

**§ 4952. Intimidation of witnesses or victims**

**(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A. § 4952(a)(1).

Further, we observe:

Actual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary mens rea, "attempts" to intimidate a witness or victim[.] The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice[.] The Commonwealth is not required to prove mens rea by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

*Commonwealth v. Beasley*, 138 A.3d 39, 48 (Pa. Super. 2016); *see also*

*Commonwealth v. Von Evans*, 163 A.3d 980, 986 (Pa. Super. 2017) ("[T]he

factfinder may consider the nature of the underlying crime in evaluating the

totality of the circumstances to determine whether the defendant intended to

induce or to intimidate a witness from not testify at the trial for the underlying

crime[.]").

Prior to X.P.'s assault on October 6, 2017, Guevara knew X.P. provided

the sole source of financial support for her children. N.T. Trial, 6/25/18, at

97–98. Guevara was also aware X.P. knew he was related to Whitman's owner

by marriage. *See id.* (recounting prior incident where Guevara's wife

threatened to have her aunt fire X.P. after Guevara made unsolicited advances

towards X.P.). Immediately after the assault, Guevara repeatedly told X.P.

no one would believe her, specifically stating "[n]o one is going to believe you

because I didn't penetrate you." *Id.* at 96. Critically, he further told X.P.

"[she] didn't have any proof, and [she] was going to lose [her] job." *Id.* at

97. These statements so unnerved X.P., she refused to report the incident

until after recording a conversation with Guevara. *Id.* at 100–103.

The circumstances surrounding the assault of X.P.—including averments

that no one would believe her, that she lacked proof, and that she would lose

her job—clearly evince Guevara's intent to intimidate X.P. such that she would

"[r]efrain from . . . reporting to any law enforcement officer . . . any

information . . . relating to the commission of a crime." 18 Pa.C.S.A. §

4925(a)(1); **see Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015) (finding history of appellant's threatening behavior towards his wife coupled with demands not to testify rendered furnished sufficient evidence under section 4952). Consequently, Guevara's conviction for victim intimidation clearly rests upon sufficient evidence. **See Doughty**, **supra** at 958.

Next, Guevara argues the trial court instructing the jury that "'[o]ral contact with female genitalia is sufficient to support the penetration requirement of IDSI'" was an abuse of discretion, because it eliminated the Commonwealth's burden to prove penetration. Brief of Appellant, at 25 (quoting N.T. Trial, 6/27/18, at 130).

Preliminarily, we examine whether Guevara has preserved his claim on appeal. Objections to jury instructions must first be made "beyond the hearing of the jury" before "the jury retires to deliberate." Pa.R.Crim.P. 647(C). However, to preserve an objection raised during a charging conference, trial counsel must renew his or her objection after the offending instruction is offered by the court to the jury. **See Commonwealth v. Parker**, 103 A.3d 17, 29–30 (Pa. Super. 2014) ("Appellant has . . . waived his objection to the jury instructions because he failed to object after the jury had been charged."). Our Supreme Court explicated this requirement as follows:

> Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position,

it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

*Commonwealth v. Pressley*, 887 A.2d 220, 224 (Pa. 2005).

Instantly, during the charging conference, Guevara's trial counsel objected to the Commonwealth's proposed jury amendment concerning the definition of penetration in the context of IDSI. N.T. Trial, 7/26/18, at 71–74. The court instructed the jury on the elements of IDSI, in relevant part, as follows:

> Deviate sexual intercourse occurs if a person's tongue penetrates the sexual organ of a woman. For all forms of deviate sexual intercourse, the slightest degree of penetration is sufficient, and no emission of semen is required. Oral contact with female genitalia is sufficient to support the penetration requirement for involuntary deviate sexual intercourse.

*Id.* at 130. When the court asked if counsel had anything to add, Guevara's trial counsel stated, "[n]o, Your Honor." As counsel failed to object after the court instructed the jury, his second claim is consequently waived. *Parker*, *supra* at 29–30.

Third, Guevara argues his convictions rest on weak and contradictory evidence, rendering the jury's verdict against the weight of the evidence. Brief of Appellant, 27–28. Specifically, he claims photos on X.P.'s cell phone, which show her working as a bartender after the assault, are inconsistent with "someone who was recently the victim of a crime." *Id.* at 28.

We review the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the

weight of the evidence. ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Mitchell***, 902 A.2d 430, 449 (Pa. 2006). Where the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review is extremely limited; unless the evidence is so unreliable "as to make any verdict based thereon pure conjecture, [such claims] are not cognizable on appellate review." ***Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa. Super. 2009). We may only grant relief if the trial court's verdict is "so contrary to the evidence as to shock one's sense of justice." ***Champney***, ***supra*** at 408.

In the Honorable Patrick T. Barrett's Rule 1925(a) opinion, he stated "[a] witness's credibility is solely for the jury to determine[,]" and consequently, he refused to "second guess the verdicts[,] as the jury's determinations are not so contrary to the evidence as to shock one's sense of justice." Rule 1925(a) Opinion, 5/23/19, at 8. We agree. At trial, the jury heard X.P.'s testimony regarding the photos. N.T. Trial, 7/25/18, at 263–66. X.P. stated she occasionally tended bar at "Jet Set," but that she could not remember if she went to work at Jet Set after being assaulted. ***See id.*** at 266 ("I don't remember if I went to work after I was assaulted, but if I would have had to go to work, I would have gone to work."). Not only are we unable to re-evaluate X.P.'s credibility, we are unsure as to how the existence of these photos in any way contradicts X.P.'s testimony. Consequently, we cannot find

Judge Barrett erred or abused his discretion in denying Geuvara's weight claim. ***Champney***, ***supra*** at 408.

Finally, Guevara claims the trial court erred as a matter of law by ordering him to register as a sex offender for life under SORNA. Brief of Appellant, at 28–29. Guevara argues his sentence is illegal because it requires a sexual offender to register for a period that exceeds the statutory maximum sentence for the offense of which he was convicted. ***Id.*** at 29.

A sentence is illegal where it exceeds statutory limits. ***See Commonwealth v. Bradley***, 834 A.2d 1127 (Pa. 2003). This Court has repeatedly held "a sentencing requirement for a defendant to register as a sexual offender for a period of time exceeding the lawful statutory maximum for his offense is not illegal." ***Commonwealth v. Martin***, 205 A.3d 1247, 1250 (Pa. Super. 2019); ***see Commonwealth v. Bricker***, 198 A.3d 371, 377 (Pa. Super. 2018); ***see also Commonwealth v. Strafford***, 194 A.3d 168, 173 (Pa. Super. 2018). Rather,

> SORNA's registration requirements are an authorized punitive measure separate and apart from Appellant's term of incarceration. The legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required courts to impose registration requirements in excess of the maximum allowable term of incarceration.

***Bricker***, ***supra*** at 377 (quoting ***Strafford***, ***supra*** at 173). Accordingly, Guevara's sentence is not illegal, and his final claim fails.

- 10 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2019