J-S26010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL DAVID PEIFER :
:
Appellant : No. 1061 WDA 2019

Appeal from the Judgment of Sentence Entered February 26, 2019
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000151-2017


BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.: FILED JULY 08, 2020

Michael David Peifer (Appellant) appeals from the judgment of sentence

imposed following his convictions of indecent assault of a person less than 13

years of age and corruption of minors.[1] We affirm.

The trial court summarized the facts and history:

On October 11, 2016, [Appellant] was charged with two
counts of aggravated indecent assault-person less than 13 years
of age; two counts of indecent assault-person less than 13 years
of age; and two counts [of] corruption of minors. The
Commonwealth charged [Appellant] with two counts of each
offense based upon its allegation that [Appellant] assaulted a [six-
year-old] child, [Victim], on two separate occasions[:] once in
[Appellant's] swimming pool and once in his living room.

A jury trial was held on October 15, 2018[.] The jury
acquitted [Appellant] of the aggravated [indecent] assault

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3126(a)(7) and 6301(a)(1)(ii).

charges, but convicted him of the remaining charges. On February 26, 2019, this [c]ourt sentenced [Appellant] to an aggregate sentence of 9 to 18 months' incarceration followed by 5 years' supervised probation.

On March 5, 2019, [Appellant] filed a post-sentence motion for judgment of acquittal based upon the sufficiency of the evidence and motions for a new trial based upon the weight of the evidence and ineffective assistance of counsel. The motions were granted in part and denied in part. Specifically, [the trial court] held that the Commonwealth failed to present sufficient evidence to enable a jury to conclude beyond a reasonable doubt that [Appellant] assaulted [the Victim] in his living room. Accordingly, [the trial court] vacated the sentences relating to the living room incident (i.e., one count of indecent assault and one count of corruption of minors). [The court] denied [Appellant's] motion for a new trial based upon the weight of the evidence, after finding that the jury's verdict did not shock our sense of justice. [The court] also denied the motion for a new trial based upon trial counsel's alleged ineffectiveness. [The trial court] found that the ineffective assistance claim did not warrant consideration and relief on direct review under the limited exception recognized in Commonwealth v. Holmes, 79 A.3d 562 (Pa. 2017). Accordingly, the convictions arising from the swimming pool incident remained in effect. Because [Appellant's] sentences arising from the swimming pool incident were to be served concurrently with the sentences arising from the living room incident, [Appellant's] sentence remained 9 to 18 months' incarceration, followed by 5 years' supervised probation.

On July 15, 2019, [Appellant] filed a [notice of appeal], which was followed, on August 14, 2019, by the filing of a concise statement of errors complained of on appeal. . . .

Trial Court Opinion, 10/23/19, at 1-3 (some citations and footnotes omitted).

The trial court filed its 1925(a) opinion on October 23, 2019.

Appellant presents three issues for review:

[1.] WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE CONVICTIONS OF INDECENT ASSAULT AND CORRUPTION OF MINORS REGARDING AN INCIDENT THAT ALLEGEDLY OCCURRED ON AUGUST, 10, 2016, INSOFAR AS THIS WAS AN EXTREME

SITUATION WHERE "THE TESTIMONY PRESENTED TO THE JURY WAS SO UNRELIABLE AND CONTRADICTORY THAT THE JURY'S CHOICE TO BELIEVE THAT EVIDENCE WAS AN EXERCISE OF PURE CONJECTURE?"

[2.] ALTERNATIVELY, DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S POST SENTENCE MOTION THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?

[3.] SHOULD [APPELLANT] BE SUBJECT TO THE REGISTRATION REQUIREMENTS AND RESTRICTIONS UNDER ACT 10 OF 2018 INSOFAR AS THE ACT IS PUNITIVE, UNLAWFUL AND UNCONSTITUTIONAL BECAUSE IT REQUIRES A DEFENDANT TO REGISTER FOR LIFE FOR A FIRST DEGREE MISDEMEANOR THAT CARRIES A MAXIMUM PENALTY OF FIVE YEARS IMPRISONMENT, IT IS BASED SOLELY ON THE POSSIBILITY OF FUTURE DANGEROUSNESS, AND IT IS MANIFESTLY IN EXCESS OF WHAT IS NEEDED TO ENSURE COMPLIANCE WITH THE LAW?

Appellant's Brief at 5.

In his first issue, Appellant purports to challenge the sufficiency of the evidence. See Appellant's Brief at 17-29. In arguing the evidence was insufficient, Appellant solely challenges the credibility of Victim's testimony. Id. at 18 ("[Victim] provided few details, and when she did offer them, she was uncertain, vague, and contradicted herself."); at 19 ("Throughout her direct and redirect examinations, it was evident that [Victim] was trying to give the answers that she believed the prosecutor wanted her to give - answers that, in fact, she was frequently prompted to give."); at 23 ("[Victim's] credibility was crucial to the resolution of this case."); id. ("[Victim], whom her mom conceded had lied in the past, had a number of reasons to 'stretch the truth,' if not completely fabricate what occurred.").

Appellant's challenge goes to the weight, not the sufficiency, of the evidence. See Commonwealth v. Melvin, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence."); Commonwealth v. Trinidad, 96 A.3d 1031, 1038 (Pa. Super. 2014) ("variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence"). Our Supreme Court has confirmed that an "appellant's challenge to the sufficiency of the evidence must fail" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence. Commonwealth v. Small, 741 A.2d 666, 672 (Pa. 1999). Accordingly, Appellant's sufficiency claim lacks merit.

In his next claim, Appellant properly challenges the weight of the evidence supporting his convictions for indecent assault and corruption of minors.[2] We have explained:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to

_____

[2] Appellant preserved this issue in compliance with Pa.R.Crim.P. 607 by raising it with the trial court in a post-sentence motion. Appellant's Post-Sentence Motion, 3/5/19, at 2-4.

- 4 -

whether the trial court palpably abused its discretion in ruling on the weight claim.

Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." Id. (citation omitted). Therefore, "[a]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence, as the trial judge is in the best positon to view the evidence presented." Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted). To allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Talbert, 129 A.3d 536, 545 (Pa. Super. 2016) (citation omitted).

Appellant argues the trial court erred in denying his motion for a new trial based upon the weight of the evidence because Victim's "testimony in this case preponderates heavily against the verdict[,] . . . such that a serious miscarriage of justice occurred." Appellant's Brief at 31.

The trial court explained:

[Appellant] first asserts that we erred in denying the motion for a new trial because "the Commonwealth's evidence was of low quality, tenuous, vague and uncertain as to make the verdict of guilty pure conjecture." [Appellant's] Concise Statement at 3. Specifically, [Appellant] asserts that [the Victim's] history of

"touching herself" and knowledge of her mother's disapproval rendered [the Victim's] testimony and report to her mother on the night of the incident unreliable because she had a motive to fabricate the claims against [Appellant]. Additionally, [Appellant] asserts that, because [Victim] aims at pleasing others and is susceptible to suggestibility, "it is highly probable that she exaggerated" the incident. Id. at 4. Last, [Appellant] argues [that Victim's] description of the pool incident could lead to the conclusion that [Appellant] was merely helping [Victim] either "get out of the pool, or flipping her over during horseplay." Id. In essence, [Appellant] disagrees with the jury's credibility determination and asserts that it should have adopted an alternative interpretation of [Victim's] testimony.

"The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence." Commonwealth v. DeJesus, [] 860 A.2d 102, 107 ([Pa.] 2004). Thus, a trial court may grant a defendant a new trial based upon a weight of the evidence claim only if "the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." [Id.] at 1055.

Further, while the standard controlling our review of the jury's verdict already affords it great deference, the jury's credibility determinations are particularly unassailable. A jury is the ultimate fact-finder, and, as such, it is "the sole arbiter of credibility of each of the witnesses." Commonwealth v. Jacoby, 170 A.3d 1065, 1080 (Pa. 2017). Accordingly, "a jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." Id.

In this case, [Appellant's] challenge to the jury's verdict rests upon his assertion that [Victim's] age, history of touching her own genitals, and suggestibility rendered her testimony incredible. [Appellant] posits that the jury should have concluded from this evidence that [Victim] fabricated her account to avoid reprimand and please others. This [c]ourt agrees that certain parts of the evidence could have led the jury to find that [Victim] fabricated her account. However, we disagree that the jury

necessarily should have made such a finding since, in our estimation, there was other evidence that was presented that just as readily lent itself to a finding that [Victim] was truthful.

The testimonies from Trooper [Donald T.] Neisner, [Victim's mother], and Victim, in addition to [Victim's] recorded statement during the forensic interview, were largely consistent. On the night of the incident, at both hospitals, and during the forensic interview, [Victim] consistently reported that [Appellant] touched her genitalia in and outside of her bathing suit. [Appellant's] testimony at trial did not significantly depart from this account, other than adding that [Appellant's] hand was also inside of her genitalia. When asked whether [Victim] would lie to please others, [Victim's mother] answered that [Victim] would not do so. Additionally, [Victim] testified that her mother did not instruct her to testify in a particular manner, only to tell the truth. The mere presence of a motivation to lie was not of such great weight that it required the jury to conclude that [Victim] actually fabricated the assault. Indeed, [Appellant's] consistent reporting and testimony as to her truthfulness support the jury's decision to forgo [Appellant's] characterizations of [Victim's] allegations and testimony. Thus, the jury acted squarely within its prerogative to find the testimonies credible and resolve any inconsistencies as it did.

Because the jury acted as the fact-finder, we were not entitled to disturb its determinations absent extraordinary circumstances. After reviewing all evidence according to the respective roles of a jury and a court, we could not conclude that the jury's verdict was against the weight of the evidence. The jury's credibility determinations, inferences, and resolutions of incongruities in the evidence were reasonable. Consequently, its verdict did not shock our sense of justice.

Trial Court Opinion, 10/23/19, at 8-10 (emphasis in original, citations omitted).

We agree with the trial court. The Victim testified at trial that while in Appellant's swimming pool, Appellant stuck his hand down the bottom portion of her swimsuit and put his hand inside her "girl parts." N.T., 10/15/18, at

92, 94-95. The Victim's mother testified that on the night of August 10, 2016, after returning home from swimming at Appellant's house, the Victim told her that Appellant touched her "privates, in her girl parts" while they were swimming. Id. at 63-65. The investigating police officer, Trooper Neisner, testified that during the forensic interview conducted of the Victim, she reported that Appellant rubbed her "girl parts" with his hand under her clothing while in Appellant's swimming pool. Id. at 54-55.

It was within the sole province of the jury to determine the weight of the evidence, including resolving conflicts in the testimony and credibility questions. See Jacoby, 170 A.3d at 1080. "[T]he evidence [was not] so tenuous, vague and uncertain that the verdict shocks the [collective] conscience of the [C]ourt." Talbert, 129 A.3d at 545 (citation omitted). Therefore, Appellant's second claim does not merit relief.

In his third claim, Appellant argues that his lifetime sex offender registration requirement under Pennsylvania's Sexual Offender Registration and Notification Act (SORNA) is an illegal sentence because it constitutes criminal punishment, and consequently, it exceeds his sentence beyond the lawful maximum sentence for indecent assault of a person less than 13 years of age. Appellant's Brief at 32-34. "Because this issue presents a question of law, our standard of review is de novo and our scope of review is plenary." Commonwealth v. Horning, 193 A.3d 411, 414 (Pa. Super. 2018).

"The Pennsylvania General Assembly passed [SORNA] as Act 111 of

2011, signed December 20, 2011. In so doing, it provided for the expiration of prior registration requirements, commonly referred to as Megan's Law, 42 Pa.C.S.A §§ 9791–9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date." In re J.B., 107 A.3d 1, 3 (Pa. 2014). On July 19, 2017, the Pennsylvania Supreme Court issued its Opinion Announcing the Judgment of the Court in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), which found SORNA to be punitive in nature and held that retroactive application of the registration and reporting requirements of SORNA to criminal defendants violated the ex post facto clauses of the United States and Pennsylvania Constitutions. Id. at 1223; see also Commonwealth v. Wood, 208 A.3d 131, 138 (Pa. Super. 2019) (en banc) ("[A]pplication of SORNA to sexual offenders for offenses committed before its effective date violates the ex post facto clauses of the United States and Pennsylvania Constitution.").

Following Muniz, the General Assembly passed legislation that attempted to cure the constitutional defects of SORNA. Regarding this legislation, we have explained:

> In response to our Supreme Court's decision in Muniz . . . , the Pennsylvania General Assembly passed Acts 10 and 29 of 2018 [(SORNA II)]. The express purpose of these legislative enactments was, inter alia, to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood[,]" and to cure SORNA's constitutional defects by "address[ing] [Muniz]." See 42 Pa.C.S.A. § 9799.51(b)(1),(4).

- 9 -

Specifically, our General Assembly modified Subchapter H's registration requirements for those offenders convicted of committing offenses that occurred on or after SORNA's effective date of December 20, 2012. The General Assembly also added Subchapter I to Title 42, Part VII, Chapter 97. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date.

Commonwealth v. Bricker, 198 A.3d 371, 375-76 (Pa. Super. 2018).

In this case, the offense date for the actions underlying Appellant's indecent assault conviction was August 10, 2016. Thus, the trial court appropriately ordered Appellant to register as a Tier III sex offender for life under Subchapter H of SORNA II. See 42 Pa.C.S.A. §§ 9799.14(d)(8), 9799.15(a)(3).

Appellant's indecent assault conviction was a first-degree misdemeanor for which the maximum sentence is five years. See 18 Pa.C.S.A. § 1104(1). As this Court has recently explained, "a sentencing requirement for a defendant to register as a sexual offender for a period of time exceeding the lawful statutory maximum for his offense is not illegal." Commonwealth v. Martin, 205 A.3d 1247, 1250 (Pa. Super. 2019); Bricker, 198 A.3d at 376-77. The only difference between Martin and Bricker and the instant matter is that the appellants in Martin and Bricker were convicted of felonies, as opposed to a misdemeanor. As the analysis of those cases is dispositive here, we quote it in detail:

With regard to Appellant's assertion that Muniz held SORNA's registration requirements constituted punishment, and, therefore, Subsection H cannot be imposed upon him as [it] exceeds the lawful statutory maximum for his offense which is seven (7) years, we observe that this Court recently held that SORNA's registration requirements are not governed by the statutory maximum sentences set forth in Chapter 11 of the Crimes Code. See Commonwealth v. Strafford, 194 A.3d 168, 172-73 (Pa. Super. 2018). Observing this issue appeared to be one of first impression post-Muniz, we reasoned as follows:

Appellant correctly observes that the Muniz Court found that the registration requirement mandated by SORNA is punitive. See Muniz, supra at 1218[.] We, thus, begin our analysis of Appellant's challenge with a review of various statutes and legal principles relating to punishments.

Our Supreme Court has explained the well-settled principle that the General Assembly "has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. The legislature also has the sole power to classify crimes[.]" Commonwealth v. Eisenberg, 98 A.3d 1268, 1283 ([Pa.] 2014) (citation and quotation omitted).

Our General Assembly has authorized courts to impose specific punishments when fashioning a sentence, and specified maximum terms and amounts of those punishments. These categories of punishment include (1) partial or total confinement, (2) probation, (3) state or county intermediate punishment, (4) a determination of guilt without further penalty, and (5) a fine. 42 Pa.C.S.A. § 9721.

With respect to the punishment of incarceration, 18 Pa.C.S.A. § 1103 governs the maximum authorized sentence of imprisonment for felony convictions. By a separate statute, these maximum allowable terms also apply to probationary sentences, a different category of punishment authorized by the General Assembly. In 42 Pa.C.S.A. § 9754(a), the legislature directed that "[i]n imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed

- 11 -

the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision." Id. (emphasis added). Thus, the legislature explicitly connected the authorized punishments of incarceration and probation by statute.

However, most sentencing alternatives are not tied to the maximum authorized term of incarceration. For example, the legislature has authorized courts to include in sentences the requirement that a defendant pay a fine or restitution. These categories of punishment are not limited by the maximum period of incarceration; rather, the legislature set different maximum authorized amounts of punishment a court may impose as part of its sentence. See, e.g., 18 Pa.C.S.A. § 1101 (defining maximum fines); 18 Pa.C.S.A. § 1106 (providing statutory scheme for restitution for injuries to person or property).

In SORNA the legislature authorized courts to include periods of registration as part of a sentence. Similar to the treatment of the payment of fines or restitution, the legislature did not tie the period of registration to the length of incarceration. See 42 Pa.C.S.A. § 9799.14 ("Sexual offenses and tier system"); 42 Pa.C.S.A. § 9799.15 ("Period of registration"). SORNA's registration provisions are not constrained by Section 1103. Rather, SORNA's registration requirements are an authorized punitive measure separate and apart from Appellant's term of incarceration. The legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required courts to impose registration requirements in excess of the maximum allowable term of incarceration.

Martin, 205 A.3d at 1251-52 (Pa. Super. 2019) (quoting Bricker, 198 A.3d at 376-77).

It is well-settled that "[t]his Court is bound by existing precedent under the doctrine of stare decisis and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court."

Commonwealth v. Reed, 107 A.3d 137, 143 (Pa. Super. 2014). Based on our decisions in Martin and Bricker, we conclude that Appellant's lifetime registration requirement under SORNA II does not constitute an illegal sentence. Accordingly, Appellant's third claim fails.

For the forgoing reasons, Appellant's appeal is without merit and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2020

- 13 -