J-S63037-18

2018 PA Super 286

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID ALLEN BRICKER | : | |
| | : | |
| Appellant | : | No. 623 WDA 2018 |

Appeal from the Judgment of Sentence April 12, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000835-2014

BEFORE:   OTT, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED OCTOBER 19, 2018**

Appellant David Allen Bricker appeals from the Judgment of sentence entered in the Court of Common Pleas of Fayette County on April 12, 2018, following remand from the Pennsylvania Supreme Court for resentencing in light of **Commonwealth v. Muniz**, 640 Pa. 699, 164 A.3d 1189 (2017).  We affirm.

A panel of this Court previously reiterated the trial court's summary of the relevant facts and procedural history of the instant matter as follows:

> In October of 2013, …the minor victim, met Appellant [ ] through her neighbor, [L.R.], who was dating Appellant at the time. [L.R.] knew Appellant as David Kennedy and introduced him to the victim as such. After they met, Appellant and the victim started communicating with each other. Their communications took many forms, whether it was in person or electronically. The victim testified she obtained Appellant's online contact information from Appellant so they could communicate with each other over the internet. She testified they would communicate online "every once in a while" and the content of the conversations included things only the two of them knew about. Specifically, [the victim]

_____

\*   Former Justice specially assigned to the Superior Court.

testified [Appellant] would tell her he wanted to be with her and he wanted to marry her.

One afternoon in November of 2013, [L.R.] and Appellant asked the victim and her brother...to help clean [L.R.'s] attic. Appellant, the victim, and her brother were cleaning the attic; [L.R.] only came up to the attic periodically. While they were cleaning the attic, Appellant on several occasions asked the victim's brother to take chairs downstairs, leaving the victim and Appellant alone in the attic.

While Appellant was alone in the attic with the victim, he told her that he loved her and not to tell anyone. Appellant also kissed the victim on the lips and grabbed and squeezed her buttocks. This was corroborated by the victim's brother, who testified that before he went downstairs, he saw Appellant kiss his sister on the lips and [grab] her buttocks.

About a month later, Patrick Ruff, a Connellsville City Police Officer, was notified that the victim's father found messages between Appellant and the victim. The case was initially reported to Officer Ruff regarding a person named David Kennedy; however, throughout his investigation, Officer Ruff ascertained David Kennedy's real name to be David Allen Bricker. Officer Ruff also determined [the victim's] date of birth...and Appellant's date of birth.... Therefore, the child victim was fifteen (15) years of age and [Appellant] was fifty-one (51) years of age at the time of the offense.

*Commonwealth v. Bricker*, No. 849 WDA 2015, unpublished memorandum at 1-2 (Pa.Super. filed March 23, 2018) (citation omitted).

Following a jury trial, Appellant was convicted of unlawful contact with a minor- sexual offenses, indecent assault- victim less than sixteen (16) years of age, and harassment.[1] Appellant was sentenced to three and one-half (3 ½) years to seven (7) years in prison. The court also deemed Appellant to be

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 3126(a)(8), and 2709(a)(1), respectively.

a sexually violent predator which subjected him to a lifetime registration under 42 Pa.C.S.A. §§ 9799.10-9799.41, the Sex Offender Registration and Notification Act ("SORNA").[2]  Appellant filed a timely notice of appeal on May 27, 2015.

On December 29, 2015, a panel of this Court affirmed Appellant's judgment of sentence.  ***Commonwealth v. Bricker***, No. 849 WDA 2015, unpublished memorandum at 15 (Pa.Super. filed December 29, 2015). Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court on January 6, 2016, and in an Order entered on January 3, 2018, the Supreme Court granted Appellant allowance of appeal limited to the following issue:

> Did the sentencing court impose a harsh, severe, and manifestly unreasonable and excessive sentence in light of the circumstances surrounding the alleged incident?

Supreme Court Order, entered January 3, 2018, at 1 (unnumbered).  The Supreme Court further directed that Appellant's "judgment of sentence is **VACATED**, and the case is **REMANDED** to the Superior Court for reconsideration in light of *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017)."  ***Id***. (emphasis in original).

---

[2] The effective date of SORNA was December 20, 2012, and Appellant committed the offenses in 2013.  SORNA replaced Megan's Law as the statute governing the registration and supervision of sex offenders.  SORNA was recently amended on February 21, 2018, by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018.

On remand, this Court stated the **Muniz** decision left no doubt that SORNA registration requirements constitute criminal punishment and further noted that in **Commonwealth v. Butler**, 173 A.3d 1212, 1215 (Pa.Super. 2017) we specifically had held that the process under which one is designated as an SVP is constitutionally flawed. **Commonwealth v. Bricker**, No. 849 WDA 2015, unpublished memorandum at 10 (Pa.Super. filed March 23, 2018). We also found that Appellant's SVP designation was a part of his sentence the Pennsylvania Supreme Court had vacated. We further stressed that because Appellant committed the offenses of which he was convicted in 2013, following the effective date of SORNA, his case presented "no clear *ex post facto* violation under **Muniz** by applying SORNA to his convictions." **Id.** at 12 (footnote omitted). Thus, we remanded the matter "to the trial court to resentence Appellant including his SORNA registration obligations." **Id**. Observing that Appellant had identified but failed to develop certain challenges to SORNA, we directed that "[a]t resentencing, Appellant shall have the appropriate full and fair opportunity to raise, develop, argue and preserve his constitutional challenges to his new reporting requirements." **Id**.

On April 12, 2018, the trial court held a Video Resentence Proceeding. At that time, Appellant argued it would violate his constitutional rights were he required to register past the maximum sentence allowed by law, which is seven years, and requested that the registration period be no longer than seven years. N.T. Video Resentence Proceeding, 4/12/18, at 3. The trial court

- 4 -

acknowledged Appellant properly had preserved as per this Court's directive the issue of whether or not SORNA's reporting requirements constitute an unconstitutional extension of the statutory maximum for the underlying offense and whether SORNA reporting requirements are cruel and unusual punishment. However, the court stated that its reading of *Muniz* and this Court's March 23, 2018, Memorandum Opinion led to its holding that the proper registration period was twenty-five years. N.T. Video Resentence Proceedings, 4/12/18, at 3-4.

Following the hearing, the trial court resentenced Appellant, in relevant part, to three and one-half (3½) years to seven (7) years in prison and directed that "as a person convicted of a **Tier II** sexual offense [Appellant] shall register for a period of 25 years . . . ." Sentencing Order, 4/12/18, at ¶¶ 4, 12 (emphasis in original); *see also*, N.T. Video Resentence Proceedings, 4/12/18, at 6-7.

Appellant filed a timely post-sentence motion on April 20, 2018. Therein, Appellant acknowledged Subchapter H of the recent amendments to SORNA apply where one's offense occurred on or after December 20, 2012, as is the case herein, but argued "the registration requirement[s] of Subchapter H are unconstitutional due to the fact that such requirements are punitive in nature and constitute punishment." **See** Post Sentence Motion, filed 4/20/18, at ¶¶ 5-7. Appellant reasoned that in light of *Muniz*, Subchapter H, which was enacted on February 21, 2018, cannot be applied to

conduct preceding its enactment, like Appellant's offenses; therefore, he has no duty to register as a sex offender. *Id*. at ¶¶ 15-17. Appellant also posited the requirement that he register for a period of twenty-five (25) years also is illegal and unconstitutional in light of the fact that it exceeds the maximum sentence allowed by law for his offenses. *Id*. at ¶¶ 18-19. The trial court denied Appellant's post-sentence motion in its Order entered on April 24, 2018.

Appellant filed a timely notice of appeal on April 26, 2018. In its Order filed on April 27, 2018, the trial court directed Appellant to file a concise statement of the errors complained of on appeal. Appellant filed the same on May 8, 2018, wherein he raised the following issue:

> Did the sentencing court impose an illegal and unconstitutional sentence by ordering [Appellant] to register for a period of twenty-five (25) years?

*See* Concise Issue, filed May 8, 2018 (unnecessary capitalization omitted).

The trial court filed its Statement in Lieu of Opinion on May 10, 2018, wherein it indicated it would be relying upon the reasoning set forth in its sentencing Order and the record from the sentencing proceeding dated April 12, 2018. The court stressed that:

> Our sentence was imposed in accordance with the Superior Court's Opinion and Order at Number 849 WDA 2015 filed on March 23rd, 2018[,] which provided the following at Page 13: **At resentencing, Appellant should be subject to resentencing under the law, including that version of the SORNA registration requirements in effect at the time he committed the offenses which led to his convictions**.

Statement in Lieu of Opinion, filed May 10, 2018 (emphasis in original).

In his brief, Appellant presents the same issue he raised in his concise statement. In support of his claim, Appellant asserts that in rendering its decision, the **Muniz** Court "stressed [its] concern with the quantity and nature of information shared to the public under SORNA" as well as "the burdens placed on registrants during the required registration period including, but not limited to, the frequency of in-person appearances, the detrimental effect of public disclosure of sensitive information concerning registrants, the deterrent and retributive effects of registration, and its punitive nature." Brief for Appellant at 12 (citations to **Muniz** omitted). Appellant also notes the Pennsylvania Supreme Court's concerns with the resultant "secondary disabilities" of registration requirements "which include difficulties in finding and keeping housing, finding employment, traveling, and schooling, as well as 'the likelihood the offender may be subject to violence and adverse social and psychological impacts.'" **Id**. at 12 (citations to **Muniz** omitted).

Appellant argues that Subchapter H does not alter the aforementioned requirements and adds only two provisions to SORNA; namely, the possibility of relief from registration requirements after twenty-five (25) years and the ability of Tier II and III registrants to appear in person only once annually but still satisfy remaining registration requirements by telephone if they have complied with these requirements for three years and have not been convicted

of any offense punishable by more than a year in prison. Appellant concludes by stating:

> [a]s a result Subchapter H cannot be imposed on [Appellant], as the above-captioned offenses were based on conduct occurring before Subchapter H's enactment on February 21, 2018. [Appellant] should have no duty to register as a sex offender beyond the statutory maximum for this offense, which is a period of seven (7) years. Any longer registration requirement would be an illegal and unconstitutional sentence.

*Id*. at 13.

Appellant's issue presents a pure question of law; therefore, this Court's standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Muniz***, 640 Pa. 699, 709, 164 A.3d 1189, 1195 (2017).

In ***Muniz***, our Supreme Court held that SORNA's enhanced registration provisions constitute criminal punishment and, thus, retroactive application of SORNA's registration requirements to convictions which occurred in the pre-SORNA timeframe violates the *Ex Post Facto* Clause of the Pennsylvania Constitution. ***Muniz***, 640 Pa. at 749, 757, 164 A.3d at 1218, 1223.[3] In response to our Supreme Court's decision in ***Muniz*** and this Court's later decision in ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa.Super. 2017),

---

[3] Recently, in ***Commonwealth v. Fernandez***, 2018 WL 4237535 (Pa.Super. filed (Sept. 5, 2018) (*en banc*) this Court held that under ***Muniz***, a trial court may not increase the registration requirements of defendants who had been found to have violated the terms of their respective probationary sentences under SORNA and ordered that the original periods of sexual offender registration and conditions imposed in each case be reinstated.

*appeal granted*, 2018 WL 3633945 (Pa. July 31, 2018) (holding certain sexually violent predator provisions of SORNA were constitutionally infirm), the Pennsylvania General Assembly passed Acts 10 and 29 of 2018. The express purpose of these legislative enactments was, *inter alia*, to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood[,]" and to cure SORNA's constitutional defects by "address[ing] [***Muniz*** and ***Butler***]." ***See*** 42 Pa.C.S.A. § 9799.51(b)(1),(4).

Specifically, our General Assembly modified Subchapter H's registration requirements for those offenders convicted of committing offenses that occurred on or after SORNA's effective date of December 20, 2012. The General Assembly also added Subchapter I to Title 42, Part VII, Chapter 97. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date.

Appellant herein admits Subchapter H applies to him "as this offense allegedly occurred after December 20, 2012, *See* 42 Pa.C.S. § 9799.11(c)." Brief of Appellant at 11. In 2015, the trial court deemed Appellant to be an SVP which subjected him to a lifetime registration requirement under SORNA. ***See*** 42 Pa.C.S.A. § 9799.15. Hence, Appellant's sentence is not illegal in light

of ***Muniz***, for therein our Supreme Court held that the *retroactive* application of SORNA's Subchapter H registration requirements to defendants whose crimes occurred *prior to* SORNA's effective date violated the *ex post facto clause* of the Pennsylvania Constitution. ***See Muniz***, 640 Pa. at 706, 164 A.3d at 1193.

With regard to Appellant's assertion that ***Muniz*** held SORNA's registration requirements constituted punishment, and, therefore, Subsection H cannot be imposed upon him as exceeds the lawful statutory maximum for his offense which is seven (7) years, we observe that this Court recently held that SORNA's registration requirements are not governed by the statutory maximum sentences set forth in Chapter 11 of the Crimes Code. ***See Commonwealth v. Strafford***, 2018 WL 3717081 at *3 (Pa.Super. filed Aug. 6, 2018). Observing this issue appeared to be one of first impression post-***Muniz***, we reasoned as follows:

> Appellant correctly observes that the ***Muniz*** Court found that the registration requirement mandated by SORNA is punitive. ***See Muniz***, ***supra*** at 1218[.] We, thus, begin our analysis of Appellant's challenge with a review of various statutes and legal principles relating to punishments.
>
> Our Supreme Court has explained the well-settled principle that the General Assembly "has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. The legislature also has the sole power to classify crimes[.]" ***Commonwealth v. Eisenberg***, 626 Pa. 512, 98 A.3d 1268, 1283 (2014) (citation and quotation omitted).
>
> Our General Assembly has authorized courts to impose specific punishments when fashioning a sentence, and specified maximum terms and amounts of those punishments. These categories of punishment include (1) partial or total confinement, (2) probation, (3) state or county intermediate punishment, (4) a

determination of guilt without further penalty, and (5) a fine. 42 Pa.C.S. § 9721.

With respect to the punishment of incarceration, 18 Pa.C.S. § 1103 governs the maximum authorized sentence of imprisonment for felony convictions. By a separate statute, these maximum allowable terms also apply to probationary sentences, a different category of punishment authorized by the General Assembly. In 42 Pa.C.S. § 9754(a), the legislature directed that "[i]n imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, **which term may not exceed the maximum term for which the defendant could be confined**, and the authority that shall conduct the supervision." ***Id.*** (emphasis added). Thus, the legislature explicitly connected the authorized punishments of incarceration and probation by statute.

However, most sentencing alternatives are not tied to the maximum authorized term of incarceration. For example, the legislature has authorized courts to include in sentences the requirement that a defendant pay a fine or restitution. These categories of punishment are not limited by the maximum period of incarceration; rather, the legislature set different maximum authorized amounts of punishment a court may impose as part of its sentence. ***See***, ***e.g.***, 18 Pa.C.S. § 1101 (defining maximum fines); 18 Pa.C.S. § 1106 (providing statutory scheme for restitution for injuries to person or property).

In SORNA the legislature authorized courts to include periods of registration as part of a sentence. Similar to the treatment of the payment of fines or restitution, the legislature did not tie the period of registration to the length of incarceration. ***See*** 42 Pa.C.S. § 9799.14 ("Sexual offenses and tier system"); 42 Pa.C.S. § 9799.15 ("Period of registration"). SORNA's registration provisions are not constrained by Section 1103. Rather, SORNA's registration requirements are an authorized punitive measure separate and apart from Appellant's term of incarceration. The legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required courts to impose registration requirements in excess of the maximum allowable term of incarceration.

***Id***. at *2-3 (emphasis in original).

- 11 -

In light of the foregoing, we conclude that Appellant's twenty-five year registration requirement authorized by Subchapter H, a lesser term than that imposed initially, does not constitute an illegal sentence. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judge Ott joins the Opinion.

Judge Murray concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2018