J-A25038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.F.Q. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.M.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 684 WDA 2021 |

Appeal from the Order Entered May 6, 2021
In the Court of Common Pleas of McKean County Orphans' Court at
No(s): Docket No. 42 19-0229

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JANUARY 4, 2022**

Appellant, F.M.P. ("Father"), appeals from the order involuntarily terminating his parental rights to his daughter, Z.F.Q., born 2017 ("Child"), pursuant to the Adoption Act.[1]  We affirm.

This matter commenced on November 5, 2020 when S.M.Q. ("Mother") and her husband, D.S.Q. (collectively "Petitioners"), filed a petition to involuntarily terminate Father's parental rights.  In the petition, Petitioners alleged that Child had resided with them since birth and Father had no relationship with Child, in large part because he was incarcerated for a period of time after Child's birth in the Erie Community Correction Center.  Petitioners sought the termination of Father's parental rights to Child pursuant to either

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 2101-2938.

Section 2511(a)(1) or (11) of the Adoption Act, as well as subsection (b). 23

Pa.C.S. § 2511(a)(1), (a)(11), (b). Notable to this appeal, subsection (a)(11)

provides grounds for termination where:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders)[, 42 Pa.C.S. §§ 9799.10-9799.42, 9799.51-9799.75,] or to register with a sexual offender registry in another jurisdiction or foreign country.

23 Pa.C.S. § 2511(a)(11). The day after filing the termination petition, D.S.Q.

filed a petition to adopt Child.

Counsel was appointed to represent Father, and an evidentiary hearing

was held on the termination petition on March 30, 2021. On May 6, 2021, the

orphans' court issued its order terminating Father's parental rights. In its

supporting memorandum, the orphans' court set forth the following findings

of fact:

> Mother was involved in a short relationship with Father. At the time that [Child] was born Father was incarcerated. Mother presented docket entries from Potter County evidencing prior convictions for: Indecent Assault Person Less Than 13 Years of Age, 18 Pa.C.S. § 3126(A)(7); and, Corruption of Minors, 18 Pa.C.S. § 6301 (A)(1). The sentencing date for these offenses was on February 24, 2014. Also, Father outlined in a Motion for Recusal that he was sentenced in 2018 in McKean County for a "Megan's Law Violation." Mother also admitted a "Pennsylvania State Police, Megan's Law Public Report." Exhibit "C." This Report, which is dated March 29, 2021, demonstrates that Father

is a "Tier 3" offender and required to register under Megan's Law/Sex Offender Registration and Notification Act (SORNA).

Father, due to being incarcerated, had limited contact with [Child]. When she was an infant Mother took her to visit Father at the correctional facility he was being held at. However, after Father was transferred from that county facility she did not take [Child] to visit Father.

At times, particularly after he was sentenced in 2018, Father's efforts to have contact with [Child], were minimal. However, at other times his efforts were increased and consistent. He sent her letters, cards on her birthday and for holidays. He attempted to have telephone contact with her. In 2018[,] Mother told Father she was not allowing him to have contact with [Child]. Since he was incarcerated, Father had limited ability to maintain contact and form a relationship with [Child]. He testified that, due to his current parole conditions, he is prohibited from having contact with his daughter. He asserts that he will be "off parole on August 4, 2021" and he wants to have contact with and form a relationship with [Child] then. In 2020 Father initiated custody proceedings to have increased contact with [Child]. The proceedings resulted in a custody order being issued. Father thereafter filed petitions for contempt in which he asserted that Mother was restricting his contact with [Child] and not abiding by the custody order.

[Child] does not have a bond with Father. Due to the lack of contact, she does not recognize him as a parent, family member or acquaintance.

Mother has been involved in a relationship with [D.S.Q.] for years. The two were married on July 9, 2018. [D.S.Q.] has provided extensive care for [Child] and the two are very bonded. [Child] recognizes [D.S.Q.] as a parent.

Orphans' Court Memorandum, 5/6/21, at 1-2.

The orphans' court concluded that grounds for termination did not exist under Section 2511(a)(1) because Father had made efforts to maintain contact with Child. *Id.* at 5. However, the orphans' court concluded that Petitioners had demonstrated grounds for termination under Section

2511(a)(11) as the evidence of record showed that Father was "required to register as a sex offender" under SORNA. *Id.* (quoting 23 Pa.C.S. § 2511(a)(11)). The orphans' court further concluded that termination of Father's parental rights was appropriate under the needs and welfare analysis of Section 2511(b) as Father had no bond with Child and was a stranger to her, while Child was very bonded to D.S.Q. and his extended family. *Id.* at 5-6. While the court noted that Father had evidenced some desire to be a parent for Child, the court concluded that this did not affect its determination that termination was appropriate under Section 2511(b) because Father's efforts to keep in contact with Child had been intermittent and his future plans to parent Child were clouded by his parole conditions and lack of evidence of where he will live or how he intends to support himself. *Id.*

In this appeal, Father presents two questions for our review:

A. Whether the [orphans'] court erred in granting the "Petition to Terminate Parental Rights" of Father based on 23 Pa.C.S.[] Section 2511(a)(11), i.e., that Father is required to register as a sex offender.

B. Whether the [orphans'] court erred in granting the "Petition to Terminate Parental Rights" of Father based on 23 Pa.C.S.[] Section 2511(a)(11) when the Petitioner[s] failed to establish that the date of the underlying registration offense occurred after the adoption of "SORNA", as required by *Commonwealth v. Wood*, 208 A.3d 131 [(Pa. Super. 2019) (*en banc*)].

Father's Brief at 4 (unnecessary capitalization omitted).

Our standard of review of an order terminating parental rights is limited to determining whether the orphans' court abused its discretion, committed

an error of law, and whether its decision is supported by competent evidence. *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019). The petitioner bears the burden of demonstrating grounds for termination by clear and convincing evidence, which is defined as evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation omitted).

Under Section 2511 of the Adoption Act, a court must engage in a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*Id.* (citation omitted).

While Father frames his appeal as comprising two separate questions, in reality he presents one issue for our review: whether Petitioners proved grounds for Section 2511(a)(11) where no evidence was submitted as to the dates that he committed the crimes that led to his registration as a sexual offender under SORNA. Father argues that in light of our *Wood* decision holding that SORNA could not be applied to criminal offenses committed before the act's effective date, Petitioners were required to submit evidence of his offense dates in order to establish that his SORNA "registration

- 5 -

requirement remains legally valid." Father's Brief at 11. As Petitioners failed to demonstrate the offense dates, Father contends that the record lacks evidence to support the orphans' court's conclusion that he was "required to register as a sexual offender under" SORNA and therefore the termination of his parental rights pursuant to Section 2511(a)(11) was in error. 23 Pa.C.S. § 2511(a)(11).

Addressing Father's appellate argument, the orphans' court concluded that, even if there was a question as to the continuing legality of Father's SORNA registration, it had "no authority" to find that his registration was "invalid." Orphans' Court Pa.R.A.P. 1925(a) Statement, at 2. "A termination proceeding is not the proper forum to litigate [the SORNA] registration requirement." *Id.* Furthermore, the orphans' court concluded that Father's own testimony supported that he was convicted of failing to register and he submitted no evidence that "he has or even plans to question his registration." *Id.*

Upon review, we agree with the orphans' court that Father is precluded from challenging the validity of his SORNA registration status in this termination proceeding. Initially, the record supports the orphans' court's conclusion that Petitioners met their burden under Section 2511(a)(11) of showing by clear and convincing evidence that Father is required to register as a sexual offender under SORNA. *See* 23 Pa.C.S. § 2511(a)(11); *B.J.Z.*, 207 A.3d at 921. At the termination hearing, Petitioners submitted exhibits showing that Father entered guilty pleas in three cases. First, Father pleaded

guilty on May 15, 2013 to possession of child pornography and corruption of minors.[2] Petitioners' Exhibits B-1, B-2. In addition, Father entered a guilty plea on October 30, 2013 to the charges of indecent assault of a person less than 13 years of age and corruption of minors.[3] *Id.* Finally, Father pleaded guilty on October 27, 2017 to failure to comply with SORNA registration requirements by not verifying his address or being photographed.[4] *Id.* Petitioners also submitted a Pennsylvania State Police "Megan's Law Public Report" dated the day before the termination hearing, which indicated that Father is listed as a Tier 3 offender in the SORNA registry as a result of his indecent assault conviction. Petitioners' Exhibit C. Father did not object to the admission of these records of his convictions at the termination hearing nor did he oppose Petitioners' request that the orphans' court take judicial notice of the fact that Father is a registrant under SORNA. N.T., 3/30/21, at 4-5. In addition, Father admitted to each of the three convictions during his testimony. *Id.* at 53-54, 80.

Furthermore, Father is estopped from challenging the underlying validity of his criminal convictions and SORNA registration in this proceeding. As our Supreme Court has explained, both civil and criminal judgments are "deemed final for purposes of *res judicata* or collateral estoppel unless or until [they

---

[2] 18 Pa.C.S. §§ 6312(d), 6301(a)(1)(i).

[3] 18 Pa.C.S. §§ 3126(a)(7), 6301(a)(1)(i).

[4] 18 Pa.C.S. § 4915.1(a)(2).

are] reversed on appeal." **Shaffer v. Smith**, 673 A.2d 872, 874-75 (Pa. 1996). Therefore, "a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial." **Id.** at 874; **see also Keller v. Kinsley**, 609 A.2d 567, 569 (Pa. Super. 1992) (stating that a criminal defendant may not "collaterally attack his criminal conviction" in a civil case). This holds true even where the criminal defendant has an appeal or Post Conviction Relief Act ("PCRA")[5] petition pending at the time of the civil action. **Shaffer**, 673 A.2d at 875. Furthermore, the party seeking to assert the preclusive effect of a criminal conviction in a civil proceeding is not required to prove that a defendant's pending appeal or PCRA petition is meritless, nor must the civil proceeding be held in abeyance until appellate review of the conviction is completed. **Id.**

Accordingly, Father may not escape the conclusive effect of his sexual offense convictions and current status as a SORNA registrant based upon his assertion that there may be grounds for him to challenge his registration in the future. Contrary to Father's claims, Petitioners were not required to prove that his SORNA registration would withstand a potential constitutional challenge based upon the ex post facto clause. Rather, the Adoption Act merely required proof by clear and convincing evidence that Father "is required to register as a sexual offender under" either Subchapter H or

_____

[5] 42 Pa.C.S. §§ 9541-9546.

Subchapter I of SORNA or an analogous sexual offender registry in another jurisdiction. 23 Pa.C.S. § 2511(a)(11). We find no error or abuse of discretion in the orphans' court's determination that Petitioners met that burden here.[6] As Father has not challenged the court's conclusion that termination of Father's parental rights would be in the best interests of Child under Section 2511(b), we therefore affirm the orphans' court's May 6, 2021 order.

Order affirmed.

_____

[6] Even if we were to address Father's underlying claim regarding the validity of his SORNA registration in light of the absence of any proof of the date he committed his sexual offenses, he would be entitled to no relief. Contrary to Father's representations, the "Megan's Law Public Report" submitted into evidence by Petitioners does indicate the offense date for his indecent assault conviction as March 27, 2013 and his possession of child pornography conviction as December 1, 2011. Petitioners' Exhibit C, at 4. Subsequent to our Supreme Court's determination in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), that retroactive application of SORNA to crimes committed prior to the enactment of the statute was unconstitutional, the General Assembly amended SORNA to add Subchapter I, which is applicable to sexual offenses committed prior to the effective date of SORNA. *See Commonwealth v. Bricker*, 198 A.3d 371, 375-76 (Pa. Super. 2018) (describing legislative history). Following these amendments, Subchapter H of SORNA now applies to sexual offenses committed on or after December 20, 2012, SORNA's effective date, while Subchapter I of SORNA applies to offenses committed after April 22, 1996, the date Megan's Law I went into effect, but prior to December 20, 2012. *See id.*; 42 Pa.C.S. §§ 9799.11(c), 9799.52. For Father's indecent assault conviction, he is required to register for life as a Tier III sexual offender under Subchapter H. 42 Pa.C.S. §§ 9799.14(d)(8), 9799.15(a)(3). Father's possession of child pornography conviction under Subchapter I mandates registration for 10 years beginning on the date of his release from the term of imprisonment imposed from that conviction. 42 Pa.C.S. §§ 9799.55(a)(1)(i)(A), 9799.56(a)(1). Therefore, Father was required to register as a sexual offender under both Subchapter H and Subchapter I as of the date the orphans' court entered the order under appeal. *See* 23 Pa.C.S. § 2511(a)(11).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/04/2022