J-A14045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH SPITKO | : | |
| | : | |
| Appellant | : | No. 737 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 2, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006152-2021

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.:                          **FILED OCTOBER 18, 2024**

Joseph Spitko ("Spitko") appeals from the judgment of sentence entered following his negotiated guilty plea to three counts of sexual abuse of children—possession of child pornography ("possession of child pornography").[1]  Spitko challenges the constitutionality of Revised Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA II").[2]  We affirm.

_____

[1] **See** 18 Pa.C.S.A. § 6312(d).

[2] **See** 42 Pa.C.S.A. §§ 9799.10-9799.42.  We observe that SORNA was originally enacted on December 20, 2011, effective December 20, 2012.  **See** Act of Dec. 20, 2011, P.L. 446, No. 111, § 12, effective in one year or Dec. 20, 2012 (Act 11 of 2011).  Act 11 was amended on July 5, 2012, also effective December 20, 2012, **see** Act of July 5, 2012, P.L. 880, No. 91, effective Dec. 20, 2012 (Act 91 of 2012), and amended on February 21, 2018, effective immediately, known as Act 10 of 2018, **see** Act of Feb. 21, 2018, P.L. 27, No. 10, §§ 1-20, effective Feb. 21, 2018 (Act 10 of 2018), and, lastly, reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12,
*(Footnote Continued Next Page)*

We need not discuss the facts underlying Spitko's convictions. We note only that, on February 2, 2023, Spitko entered a negotiated guilty plea to three counts of possession of child pornography in connection with his possession in 2021 of twenty-three files of sexually explicit photos depicting children between the ages of thirteen and eighteen. *See* Trial Court Opinion, 10/27/23, at 2. As part of his plea agreement, Spitko waived his right to a pre-sentence sexually violent predator ("SVP") determination hearing and agreed that he would submit to an assessment by the Sexual Offender Assessment Board ("SOAB") after sentencing and, if assessed as an SVP by the SOAB, would proceed to an SVP determination hearing before the trial court. *See* N.T., 2/2/23, at 10-11. During the plea hearing, Spitko confirmed his understanding that, pursuant to SORNA II, his plea of guilty would require him to register with the Pennsylvania State Police as a Tier I sex offender for a period of fifteen years. *See id*. at 8-9. Nevertheless, before entering his plea, Spitko's counsel stated "just for the record, I'm objecting to the imposition of the [SORNA II registration] requirements in that the imposition is a denial [*sic*]. It's my client's right to reputation under the Pennsylvania

_____

2018 (Act 29 of 2018). Acts 10 and 29 of 2018 are generally referred to collectively as SORNA II. Through Act 10, as amended in Act 29, the General Assembly split SORNA I's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10-9799.42.

Constitution as an illegal sentence in excess of the statutory maximum." *Id*. at 4. Spitko did not present any evidence or argument to the trial court on any issue related to his mandatory SORNA II registration requirements. The trial court noted the objection and accepted the plea. *Id*. The trial court immediately sentenced Spitko to the negotiated concurrent terms of seven years' probation on each offense, and instructed Spitko that, because of his convictions, he was required to register as a Tier I sex offender under Revised Subchapter H of SORNA II for a period of fifteen years. *See id*. at 14-15; *see also* 42 Pa.C.S.A. §§ 9799.14(b)(9), 9799.15(a)(1).[3] Spitko filed a timely post-sentence motion challenging the constitutionality and legality of his SORNA II registration requirements as a denial of his constitutional right to reputation[4] and as an illegal punitive sentence in excess of the statutory

_____

[3] *See* 42 Pa.C.S.A. § 9799.12 (defining "sexual offender" as an "individual who has committed a sexually violent offense" and defining "sexually violent offense" as an "offense specified in section 9799.14 . . . as a Tier I, Tier II or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted"); *see also* 42 Pa.C.S.A. § 9799.14(b)(9) (declaring that a possession of child pornography conviction under 18 Pa.C.S.A. § 6312(d) constitutes a Tier I sexual offense); 42 Pa.C.S.A. § 9799.13(1) (declaring that a "sexual offender who has a residence within" Pennsylvania must "register with the Pennsylvania State Police as provided in sections 9799.15"); 42 Pa.C.S.A. § 9799.15(a)(1) (declaring that "an individual specified in section 9799.13 (relating to applicability) shall register with the Pennsylvania State Police as follows: (1) An individual convicted of a Tier I sexual offense . . . shall register for a period of 15 years").

[4] The Pennsylvania Constitution provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. Art. I, § 1.

maximum, citing **Commonwealth v. Torsilieri**, 232 A.3d 567, 575 (Pa. 2020) ("**Torsilieri I**").[5]  The trial court denied the motion.  Spitko thereafter filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Spitko raises the following issue for our review: "Did the [trial] court err in imposing the registration requirements of [SORNA II] when those registration requirements constitute: (1) a violation of the [r]ight to [r]eputation under the Pennsylvania Constitution[;] and (2) an illegal sentence in excess of the statutory maximum for [Spitko]'s convictions?" Spitko's Brief at 3.

With respect to the first subpart of Spitko's issue, wherein he claims that his SORNA II registration requirements constitute a violation of the right to

---

[5] In **Torsilieri I**, a divided majority of our Supreme Court vacated the portion of the trial court's order declaring the registration and notification requirements of Revised Subchapter H unconstitutional.  While the High Court found that the defendant's evidence raised a colorable argument to debunk the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems underlying the General Assembly's findings as well as various decisions of the High Court and the United States Supreme Court, the **Torsilieri I** Court noted the lack of opposing science in the record, as well as the fact that the record did not, at that time, provide a sufficient basis to overturn the legislative presumption. Hence, the **Torsilieri I** Court remanded the matter to the trial court for further evidentiary proceedings.  Specifically, the **Torsilieri I** Court directed the trial court to consider whether the registration and notification requirements applicable to sexual offenders constituted criminal punishment, and in doing so, to address five of the seven factors set in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963).  Following remand, the matter then returned to our High Court, where it remained pending at the time of Spitko's sentencing.

reputation under the Pennsylvania Constitution, we observe that our Supreme Court has held that constitutional challenges to the registration requirements of Revised Subchapter H implicate the legality of sentencing. *See Commonwealth v. Thorne*, 276 A.3d 1192, 1194, 1198 (Pa. 2022) (concluding that "this Court's legality of sentencing jurisprudence — *i.e.*, that challenges implicating the legality of a sentence cannot be waived — applies equally to constitutional challenges to Revised Subchapter H of SORNA"); *see also Commonwealth v. Boyd*, 287 A.3d 957, 959 (Pa. Super. 2022) (holding that "constitutional challenges to the application of Revised Subchapter H raise questions of law, as they assert that the registration requirements of Revised Subchapter H are punitive and unduly rely on an irrebuttable presumption that all sex offenders pose a high risk of future dangerousness and reoffending"). "As with all questions of law, our standard of review is *de novo* and our scope of review is plenary." *Boyd*, 287 A.3d at 959.

Our Supreme Court has outlined the significant burden borne by an individual seeking to invalidate a statutory scheme on constitutional grounds:

> In addressing constitutional challenges to legislative enactments, we are ever cognizant that "the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society," but also that "any restriction is subject to judicial review to protect the constitutional rights of all citizens." *In re J.B.*, . . . 107 A.3d 1, 14 ([Pa.] 2014). We emphasize that "a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." *Id*.

*Torsilieri I*, 232 A.3d at 575.

On May 31, 2024, our Supreme Court issued its decision in *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024) ("*Torsilieri II*"), wherein it reversed *Torsilieri I*. In *Torsilieri II*, the High Court considered "whether the General Assembly's determination, in [SORNA II], that individuals who commit sexual offenses pose a high risk of committing additional sexual offenses constitutes an unconstitutional irrebuttable presumption violative of due process, because it impairs the right to reputation under the Pennsylvania Constitution." *Id*. at 79. Our High Court explained:

> [T]he first issue before us concerns a presumption which largely undergirds the criminal justice system's treatment of sex offenders: that those who commit sexual offenses pose a high risk to reoffend. The General Assembly has memorialized this presumption in its legislative findings: "Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S.[A.] § 9799.11(a)(4). To challenge such assumptions under the irrebuttable presumption doctrine, a challenging party must demonstrate: (1) an interest protected by the due process clause; (2) utilization of a presumption that is not universally true; and (3) the existence of a reasonable alternative means to ascertain the presumed fact.

*Id*. at 79-80 (some internal citations omitted).

The *Torsilieri II* Court noted that the parties did not meaningfully dispute the first prong of the doctrine—that "the right to reputation is protected by the due process clause and that the designation as a sexual offender, based upon a presumption of posing a high risk of recidivism, impacts one's reputation." *Id*. at 97 n.13. Turning to the second prong of

- 6 -

the irrebuttable presumption doctrine, the Court explained that "to meet his heavy burden of establishing that the General Assembly's presumption was not universally true, [Torsilieri] was required to establish that there exists a scientific consensus that sexual offenders pose no greater risk of committing additional sexual crimes than other groups not subject to similar registration laws." **Id**. at 98-99. The High Court then noted:

> Here, Torsilieri's own experts concede that adult sexual offenders reoffend at a rate of at least three times higher than other individuals convicted of non-sexual offenses. Accordingly, rather than refuting it, the evidence **supports** the legislative presumption; the evidence validates the statutory underpinnings of Subchapter H. We need go no further. Having reviewed the arguments and the evidence presented below, we find that the evidence does not demonstrate a consensus that the presumption at issue is not universally true. Thus, we hold that Torsilieri has failed to meet his heavy burden to demonstrate that the irrebuttable presumption at issue was **constitutionally** infirm.

**Id**. at 99-100 (internal citations and footnote omitted, emphasis in original). Based on its disposition of the second prong, the **Torsilieri II** Court noted that it did not need to evaluate the third prong of the irrebuttable presumption doctrine.[6]

---

[6] Nevertheless, the Court noted that the third prong required to challenge the irrebuttable presumption doctrine would be met for non-SVPs attacking their registration requirements because a reasonable alternative means to evaluate their likelihood of re-offense would be available through an individualized assessment similar to SORNA II's individualized assessment of adult sexual offenders as SVPs. **See Torsilieri II**, 316 A.3d at 97 n.13. Notably, the defendant in **Torsilieri I** and **II** was determined not to be an SVP. **See id**. at 81.

- 7 -

Spitko argues that the fifteen-year period of registration for a Tier I sex offender under SORNA II is unconstitutional because it harms his reputation, and that more reasonable alternatives exist to protect the community. Spitko asserts that this case is controlled by *In re J.B.*, *supra*, wherein our Supreme Court held that lifetime sex offender registration requirements were unconstitutional as applied to juveniles. Spitko argues that that the holding in *In re J.B.* is equally pertinent to this case.[7] Spitko additionally argues that SORNA II communicates incorrect assumptions that every registrant is a danger to the community, incapable of rehabilitation, and likely to recidivate. Spitko asserts that SORNA II brands every registrant as an incurable recidivist. Spitko claims that two alternative means exist to identify those at risk to reoffend: (1) empirical risk-based assessments; and (2) SVP assessments conducted by SOAB. Spitko contends that the trial court ignored the factual findings made by the *Torsilieri* trial court upon remand from our Supreme Court following *Torsilieri I*, and claims that those findings are squarely at odds with SORNA II's presumption that all sex offenders pose a

_____

[7] Contrary to Spitko's contention, *In re J.B.* would not control the outcome here. In *In re J.B.*, our Supreme Court held that lifetime sex offender registration requirements were unconstitutional as applied to juveniles, not adults. The Court recognized that clearest proof, based on a consensus of scientific evidence agreed upon by the parties, established that juvenile sex offenders reoffend at rates that are "indistinguishable" from the rates of juvenile non-sexual offenders. In so finding, the Court in *In re J.B.* repeatedly distinguished juvenile offenders from their adult counterparts, noting that "[w]hile adult sexual offenders have a high likelihood of re-offense, juvenile sexual offenders exhibit low levels of recidivism . . .." *Id*. at 17 (discussing studies outlining the consensus on low re-offense rates for juvenile sexual offenders).

high risk of reoffending. Spitko asserts that the portion of his sentence imposing SORNA II registration requirements should be vacated as unconstitutional. In the alternative, similar to **Torsilieri I**, Spitko requests that we remand for an evidentiary hearing at which he can offer expert testimony (related to studies published in 2009 and 2014 that he appended to his brief) in support of his claims that SORNA II creates an unconstitutional irrebuttable presumption against sexual offenders.[8]

At the time Spitko filed his brief in this Court in February 2024, he did not have the benefit of **Torsilieri II**, which was still pending. Accordingly, Spitko relied upon **Torsilieri I** in support of his argument that this Court should remand for a factual hearing so that he can provide expert testimony in support of his claims, or that the SORNA II portion of his sentence should be vacated because it is unconstitutional. Similarly, the trial court filed its Rule 1925(a) opinion prior to **Torsilieri II**.

As explained above, to challenge an assumption under the irrebuttable presumption doctrine, Spitko was required to demonstrate: (1) an interest protected by the due process clause; (2) utilization of a presumption that is

_____

[8] We note that Spitko did not provide any evidence or legal arguments to the trial court in support of his constitutional claim. Instead, he incorporates studies within his appellate brief as exhibits. Because these exhibits are not part of the certified record in this case, this Court may not consider them. **See Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (noting that "[t]he law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal"); **see also Commonwealth v. Stanton**, 440 A.2d 585, 588 (Pa. Super. 1982) (noting "[i]t is of course fundamental that matters attached to or contained in briefs are not evidence and cannot be considered part of the record . . . on appeal").

not universally true; and (3) the existence of a reasonable alternative means to ascertain the presumed fact. *See Torsilieri II*, at 79-80. With respect to the second prong, Spitko needed to show that there is scientific consensus that adult sexual offenders are no more likely to commit additional sexual crimes than other groups not subject to similar registration requirements. *See id*. at 98-99. However, Spitko provided *no* evidence to the trial court to substantiate his claim that Revised Subchapter H is constitutionally infirm. As a result, Spitko failed to meet his burden of demonstrating that Revised Subchapter H utilizes an irrebuttable presumption that is not universally true. Based on Spitko's failure to satisfy the second prong of the irrebuttable presumption doctrine, we do not need to go any further in our analysis.

In any event, the undisputed scientific evidence presented in *Torsilieri II* demonstrated that adult sexual offenders reoffend at a rate of at least three times higher than other individuals convicted of non-sexual offenses. Thus, our Supreme Court ruled that such evidence supports the legislative presumption, and validates the statutory underpinnings of Revised Subchapter H. *See Torsilieri II*, 316 A.3d at 99-100. Accordingly, we conclude that no relief is due.

In subpart two of his claim, Spitko argues that his sentence is illegal because his mandatory fifteen-year reporting requirement under Revised Subchapter H of SORNA II is punitive in nature and exceeds the statutory maximum term of ten years' imprisonment for possession of child pornography. Since "the legality of a sentence presents a pure question of a

law, our scope of review is plenary, and our standard of review is *de novo*."

***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 889 (Pa. Super. 2019)

(citation omitted).

The ***Torsilieri II*** Court considered whether the trial court erred in determining that the registration and notification requirements of Revised Subchapter H are punitive. After balancing five of the ***Mendoza-Martinez*** factors,[9] the High Court determined that two weighed in favor of finding Subchapter H to be punitive in effect, and three weighed in favor of finding the legislation to be nonpunitive, with the sixth and seventh factors being given the greatest weight. Nonetheless, the ***Torsilieri II*** Court ruled that weighing the ***Mendoza-Martinez*** factors did not compel a conclusion that Revised Subchapter H is punitive. ***Id***. at 109. The Court additionally determined that the defendant's constitutional challenges failed because he did not meet his heavy burden, by the clearest of evidence, to rebut the

---

[9] The ***Mendoza-Martinez*** factors considered by the ***Torsilieri II*** Court, in relation to the registration and notification requirements of Revised Subchapter H, were: (1) whether the requirements involve an affirmative disability or restraint; (2) whether they have been historically regarded as punishment; (3) whether their operation will promote the traditional aims of punishment—retribution and deterrence; (4) whether they may be rationally connected to an alternate purpose; and (5) whether they are excessive in relation to the alternative purpose. ***See Torsilieri II***, 316 A.3d at 83. Consistent with prior case law, the High Court determined that ***Mendoza-Martinez*** factor (3), a finding of scienter, and factor (5), past criminal misconduct, provided little guidance in determining whether Revised Subchapter H is punitive, and, thus, did not consider these factors. ***See Torsilieri I***, 232 A.3d at 589; ***see also Torsilieri II***, 316 A.3d at 83 n.8.

General Assembly's stated non-punitive purpose of informing and protecting the public. *Id*. at 109-110.

Additionally, this Court has ruled that a sentencing requirement for a defendant to register as a sexual offender for a period of time exceeding the lawful statutory maximum for the offense is not illegal:

> SORNA's registration requirements are . . . separate and apart from [the] term of incarceration. The legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required courts to impose registration requirements in excess of the maximum allowable term of incarceration.

*Commonwealth v. Strafford*, 194 A.3d 168, 173 (Pa. Super. 2018); *see also Commonwealth v. Bricker*, 198 A.3d 371, 377 (reiterating that a requirement for a defendant to register as a sexual offender for a period of time exceeding the lawful statutory maximum for his offense is not illegal).

Spitko initially contends that Revised Subchapter H of SORNA II is punitive in nature. In making this argument, Spitko did not have the benefit of *Torsilieri II*, and instead relied on case law considering statutes other than Subchapter H. *See* Spitko's Brief at 27-34.[10] Spitko further claims, without reference to legal authority, that his fifteen-year reporting requirement under SORNA II is illegal because its notification and registration provisions permit

---

[10] Spitko also relies heavily on the reasoning of the *Torsilieri* trial court opinion issued upon remand by the *Torsilieri I* Court. However, this Court is not bound by the opinions of trial court judges. Moreover, the rulings of the trial court were reversed by our High Court in *Torsilieri II*.

punishment in excess of the ten-year statutory maximum sentence for his underlying offenses for possession of child pornography.

Here, ***Torsilieri II*** is directly on-point and compels rejection of Spitko's challenge to SORNA Subchapter H as punitive in nature. ***See Torsilieri II***, at 109 (holding that weighing the ***Mendoza-Martinez*** factors did not compel a conclusion that Revised Subchapter H is punitive). Moreover, there is no merit to Spitko's claim that his fifteen-year reporting requirement under SORNA II is illegal because its notification and registration provisions permit punishment in excess of the ten-year statutory maximum sentence for his underlying offenses. ***See Strafford***, 194 A.3d at 173; ***see also Bricker***, 198 A.3d at 377. Thus, Spitko's challenge to the legality of his sentence is without merit.

For the reasons discussed above, we conclude Spitko's claims do not warrant relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/18/2024

- 13 -